UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

LEE SIMMONS,

Plaintiff,

v.

HANSEN,
DR. UNGER,
R.N. RENS,
DR. SAM,
CCA/P.C.F. MEDICAL DEPARTMENT,
and WILLIE,

Defendants.

Civil No. 00-992 (PAM/FLN)

REPORT AND RECOMMENDATION

---

Plaintiff, an inmate at the Prairie Correctional Facility ("PCF") in Appleton, Minnesota, is seeking relief under 42 U.S.C. § 1983 for alleged violations of his federal constitutional rights. (Docket No. 1.) The matter is now before the undersigned Magistrate Judge for initial screening pursuant to 28 U.S.C. § 1915A, and for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. For the reasons discussed below, the Court finds that Plaintiff has failed to state a claim on which relief can be granted as to Defendants Hansen, Unger, Rens, Sam and CCA/P.C.F. Medical Department. It will therefore be recommended that the action be dismissed as to those Defendants.

## I. BACKGROUND

It should be noted at the outset that Plaintiff has filed three pleadings in this case -- (1) an original complaint filed April 18, 2000, (Docket No. 1), (2) an amended complaint filed May 1, 2000, (Docket No. 6), and (3) a second amended complaint, (erroneously identified as "Third Amended Complaint"), filed on May 8, 2000, (Docket No. 9). Although Plaintiff is

FILED 7-20-00
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

permitted to amend his complaint only once "as a matter of course," leave to file subsequent amendments is to be "freely given when justice so requires." Fed. R. Civ. P. 15(a). In this case, Plaintiff filed his second amended complaint just a week after filing his first amended complaint. Neither the Court nor any of the Defendants had acted in response to the first amended complaint before the filing of the second amended complaint, and the Court finds no potential prejudice in allowing Plaintiff to amend his complaint for a second time. Therefore, Plaintiff's second amended complaint will be accepted by the Court, and it will be treated as his pleading of record, superceding both of his earlier pleadings in this action.[1]

According to the second amended complaint, Plaintiff was transferred to PCF on January 22, 2000. Prior to that date, he had been confined at another prison where he had been taking the drug Prozac. Plaintiff alleges that the Prozac caused pain in his penis and lumps inside his testicles. Upon his arrival at PCF, he sought medical treatment for his pain and discomfort. Defendant Dr. Unger, (apparently a PCF physician), allegedly examined Plaintiff, but "never took blood or urine to check for any other problems."

On April 6, 2000, Plaintiff was examined by an unnamed "Contract Urology Specialist." Plaintiff apparently was hoping that the specialist would order that an operation be performed to remove the lumps in Plaintiff's "testicle area." However, the specialist declined to order such an operation, stating that "he did not want to do an operation on [Plaintiff] because he feared a lawsuit because of [Plaintiff's] condition to date." (Second amended complaint, [Docket No. 9], ¶ 13.)

---

[1] Inasmuch as Plaintiff has now had three opportunities to state his claims for relief, the Court would be strongly disinclined to allow any further amended pleadings in this case.

Plaintiff further alleges that Defendant Dr. Sam, "a contract Medical Doctor for CCA/PCF," also examined him and attempted to "disrobe" him in front of three female members of the prison staff. Evidently Plaintiff eventually did "disrobe" himself, (presumably so that Dr. Sam could perform his examination), but the three female staff members apparently were not present when he did so.[2] Plaintiff further alleges that Dr. Sam "used gloves off a dirty food rack" while examining his testicles. Plaintiff claims that Dr. Sam was "retaliating" against him, although his pleading does not identify what may have prompted the alleged retaliation.

Plaintiff also claims that Defendants Rens and Willie retaliated against him. Willie allegedly caused Plaintiff to be placed in segregated confinement in retaliation for various grievances that Plaintiff attempted to pursue, which pertained to Defendant Rens and "other medical issues and clinical service." Rens allegedly called Plaintiff "Cinderella" in front of other inmates.

Plaintiff contends that the above-described acts and omissions by the various Defendants violated his federal constitutional rights. He is asking the for "injunctive relief directing CCA/PCF to provide Plaintiff with the needed operation to remove the lumps in [his] testicle area." He also is seeking compensatory and punitive damages (in unspecified amounts), as well as a "permanent injunction preventing the CCA/PCF staff from continuing discrimination acts against gay or bisexual inmates." (Second amended complaint, 10th page.)

---

[2] After alleging that Defendant Sam "attempted to disrobe him" in front of the three women, Plaintiff has added "until I asked that he not do so." The clear implication is that Plaintiff did not actually disrobe in front of any women.

## II. DISCUSSION

Because Plaintiff is a prisoner who is seeking redress from various governmental employees,[3] his pleading must be screened in accordance with the procedures prescribed by 28 U.S.C. § 1915A. That statute, which is part of the Prison Litigation Reform Act of 1995, ("the PLRA"), requires federal courts to screen the pleadings in every civil action brought by a prisoner against governmental entities and/or employees "before docketing, if feasible or, in any event, as soon as practicable after docketing." 28 U.S.C. § 1915A(a). The Court must determine which aspects of the pleading are actionable and should be allowed to proceed. To the extent that the pleading, on its face, fails to state a cognizable claim, it must be dismissed. 28 U.S.C. § 1915A(b)(1). Here, the action must be dismissed as to several of the named Defendants, because Plaintiff's second amended complaint fails to state any actionable claim against them.

A. Defendant Hansen

The second amended complaint fails to state an actionable claim against Defendant Hansen, because it does not describe anything that she allegedly did that could have violated Plaintiff's constitutional rights. Hansen is identified in an introductory paragraph as an "employee of CCA/PCF, Bureau of Health Service, employed at PCF as the Facility Health Service Director." However, the substantive allegations of Plaintiff's pleading do not even mention Defendant Hansen. There certainly are no factual allegations describing anything that Hansen allegedly did or failed to do that could be viewed as a violation of Plaintiff's

---

[3] Plaintiff expressly alleges that all Defendants "acted under color of state and federal law at all times material" to his claims.

federal constitutional rights. The action must therefore be dismissed as to this Defendant.[4]

B. Defendant Unger

Defendant Unger is identified as a "contract doctor" who examined Plaintiff after he initially requested medical attention for "lumps inside the testicle area." Plaintiff apparently is attempting to sue Dr. Unger for violating his Eight Amendment rights by acting with deliberate indifference toward Plaintiff's serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 102-03 (1976). This claim is based on just a single substantive factual allegation -- namely that Dr. Unger did not take any blood or urine samples from Plaintiff. It is not alleged, (nor can it be inferred), that blood or urine samples would have disclosed the cause of Plaintiff's alleged medical problems, or that a reasonably competent doctor would have obtained such samples. It certainly has not been alleged, or even implied, that Dr. Unger deliberately declined to obtain blood and/or urine samples, knowing that Plaintiff would suffer serious adverse health effects because of that omission.

"A prison official exhibits deliberate indifference when the official actually 'knows of and disregards' a prisoner's serious medical needs." Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995), quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, it is cruelty -- deliberate disregard for a known serious health problem -- that is the sine qua non of an

---

[4] It appears from some of Plaintiff's other submissions in this case that he might be attempting to sue Defendant Hansen simply because she is (allegedly) the Health Service Director at PCF. Plaintiff may be attempting to hold her legally responsible for some alleged constitutional misconduct by her subordinates. It is well-settled, however, that the doctrine of respondeat superior is not applicable to § 1983 claims, and that supervisors will not be held vicariously liable for the wrongful acts or omissions of their subordinates. Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995) (prison officials cannot be held liable on an Eighth Amendment claim based solely on a subordinate's improper medical treatment).

Eighth Amendment claim. It is simply not enough for a prisoner to merely allege, as Plaintiff does here, that some prison health care provider failed to conduct proper diagnostic testing. Estelle, 429 U.S. at 106 ("a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment"). To state a cognizable Eighth Amendment claim, a prisoner-plaintiff must allege facts showing that prison officials were deliberately indifferent to a serious medical need; i.e., that they "ignored an acute or escalating situation," or that they knowingly caused delays that "adversely affected [Plaintiff's] prognosis, given the type of injury" at issue. Sherrer v. Stephens, 50 F.3d 496, 497 (8th Cir. 1994) (per curiam); see also, Beyerbach v. Sears, 49 F.3d 1324, 1327 (8th Cir. 1995).

Even where the medical treatment provided to an inmate "was inadequate, and even if the inadequacy would have amounted to negligence in a state-law tort case claiming medical malpractice, more must be shown to establish a constitutional violation. There must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." Bryan v. Endell, 141 F.3d 1290, 1291 (8th Cir. 1998) (emphasis added).

While federal courts must "view pro se pleadings liberally, such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law." Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980). See also, Martin v. Sargent, 780 F.2d 1334, 1337 (1985) ('[a]lthough it is to be liberally construed, a pro se complaint must contain specific facts supporting its conclusions"). Here, even with the benefit of liberal construction, Plaintiff's second amended complaint does not describe any

specific events or occurrences, or any specific acts or omissions, showing that Dr. Unger acted with cruelty or callousness. Plaintiff's bare assertion that Dr. Unger neglected to take blood and urine samples would not even support a medical malpractice claim; it certainly is not enough to support an Eighth Amendment cause of action. The action must therefore be dismissed as to this Defendant too.

C. Defendant Rens

Defendant has attempted to state a "retaliation" claim against Defendant Rens, alleging that she "harassed" him by calling him "Cinderella." To state an actionable retaliation claim, a prisoner must allege facts showing that the defendant imposed some disciplinary sanction against him in retaliation for actions protected by the Constitution. Goff v. Burton, 7 F.3d 734, 738 (8th Cir. 1993) (prison officials may not "impose a disciplinary sanction against a prisoner in retaliation for the prisoner's exercise of his constitutional right"), cert. denied, 512 U.S. 1209 (1994). Plaintiff's attempted retaliation claim against Defendant Rens is defective because he has not alleged that Rens imposed any sanction against him, or that she otherwise disciplined him in any manner. According to Plaintiff's pleading, Rens merely called him a name that he found to be offensive. Name-calling by prison officials may be inappropriate, but it cannot be viewed as a disciplinary sanction that could give rise to a § 1983 retaliation claim, nor is it otherwise an offense of constitutional magnitude. Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) ("[v]erbal threats are not constitutional violations cognizable under § 1983"). Because there are no factual allegations demonstrating that Rens engaged in disciplinary retaliation, Plaintiff has failed to state an actionable retaliation claim against her.

D. Defendant Sam

Plaintiff's attempted retaliation claim against Defendant Sam suffers from the same defect as the one found in his claim against Defendant Rens. Plaintiff does not allege that Sam imposed any sanctions against Plaintiff or pursued any type of disciplinary action against him. Instead, Plaintiff alleges only that Sam "attempted" to disrobe him in front of three female correctional officials, and that he "used gloves off a dirty food rack to touch [Plaintiff's] testicles." While Defendant Sam's conduct (as described by Plaintiff) certainly appears to be unprofessional, it does not constitute the type of disciplinary action that could give rise to an actionable § 1983 retaliation claim. Nor does Sam's alleged misconduct otherwise violate the federal Constitution. Therefore, the action must also be dismissed as to this Defendant.

E. Defendant "CCA/PCF Medical Department"

Finally, Plaintiff's action must be dismissed as to the Defendant identified as "CCA/PCF Medical Department," because there are no factual allegations suggesting that this Defendant is a separate suable entity. There is no reason to believe that "CCA/PCF Medical Department" is anything other than a label applied a group of health care providers who work at PCF. The medical department at PCF appears to be analogous to a municipal police department, which cannot be sued as a separate defendant in a § 1983 action. See Ketchum v. City of West Memphis, 974 F.2d 81, 82 (8th Cir. 1992), ("[t]he West Memphis Police Department and West Memphis Paramedic Services are not judicial entities suable as such. They are simply departments or subdivisions of the City government"). Thus, the Court concludes that Plaintiff cannot sue "CCA/PCF Medical Department" as a separate

Defendant.[5]

## III. CONCLUSION

For the reasons discussed above, the Court concludes that Plaintiff's second amended complaint fails to state a claim on which relief can be granted as to Defendants Hansen, Unger, Rens, Sam, and CCA/PCF Medical Department. It is therefore recommended that the action be dismissed as to those Defendants pursuant to 28 U.S.C. § 1915A. The Court is not presently prepared to decide, sua sponte, that Plaintiff has failed to state a cognizable claim against the one remaining Defendant identified as "Willie," and Plaintiff will therefore be allowed to pursue his claims against Defendant Willie for now.

## IV. RECOMMENDATION

Based upon the above, and upon all the files, records, and proceedings herein,

**IT IS RECOMMENDED** that:

1. Plaintiff's claims against Defendants HANSEN, DR. UNGER, R.N. RENS, DR. SAM, and CCA/P.C.F. MEDICAL DEPARTMENT, be dismissed pursuant to 28 U.S.C. §

---

[5] Plaintiff may also be attempting to sue the unnamed "Contract Urology Specialist" who allegedly examined him on April 6, 2000, (even though that person is not listed in the caption of the second amended complaint). At this point, it is unnecessary to determine whether Plaintiff has stated a viable claim against the Contract Urology Specialist, because that person has not even been identified yet. It is worth noting, however, that Plaintiff alleges only that the Contract Urology Specialist declined to order an operation for the lumps in Plaintiff's testicle area "because he [the doctor] feared a lawsuit." In other words, the Contract Urology Specialist apparently did not order surgery on Plaintiff's testicles, because he or she believed it would be medically imprudent to do so. Plaintiff may disagree with that opinion, but a mere difference of opinion on a medical issue will not support a § 1983 claim. Vaughan v. Lacey, 49 F.3d 1344, 1346 (8th Cir. 1995) ("disagreement as to the proper course of treatment... is not actionable under the Eighth Amendement"). Thus, even if Plaintiff could identify the "Contract Urology Specialist" by name, he could not maintain an Eighth Amendment claim against that person based on the facts alleged in his second amended complaint.

1915A(b); and

2. Plaintiff's claims against Defendant WILLIE, as set forth in his second amended complaint, (Docket No. 9), be allowed to proceed at this time, without prejudice to any defenses that Defendant Willie may later seek to raise.

Dated: July 18, 2000

FRANKLIN L. NOEL
Chief Magistrate Judge

Under D.Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by 8-4-00, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.